## 100 Metro. Ave. Realty Corp. v Light RE LLC

2023 NY Slip Op 34569(U)

December 20, 2023

Supreme Court, Kings County

Docket Number: Index No. 505282/2020

Judge: Debra Silber

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS : PART 9**

---

**100 METROPOLITAN AVENUE REALTY CORP.,**

                           **Plaintiff,**

     **-against-**

**LIGHT RE LLC,**
**and STEFAN ROHNER,**

                           **Defendants.**

**DECISION / ORDER**

**Index No. 505282/2020**
**Motion Seq. No. 6 & 7**

---

*Recitation, as required by CPLR 2219(a), of the papers considered in the review of plaintiff's motion for partial summary judgment and plaintiffs' cross motion for a stay of this action.*

| Papers | NYSCEF Doc. |
|---|---|
| Notices of Motion, Affirmations and Exhibits............................... | 122-139 |
| Notice of Cross Motion, Affirmations and Exhibits........................ | 146-152 |
| Reply …………….................................................................... | 156-157 |

**Upon the foregoing cited papers, the Decision/Order on these motions is as follows:**

***Background***

In 2003, plaintiff entered into a lease [Doc 13] with an entity named York RE Inc., for five years, on a Real Estate Board of NY - Standard Form of Loft Lease, for the top floor of the premises, a warehouse located at 100 Metropolitan Avenue, Brooklyn, NY. The premises are more specifically described as 100-108, 110, 112 Metropolitan Avenue, and 77-81 and 83 North First Street. Plaintiff's notice of termination states that the zoning district for this property is M-1. In 2008, York RE Inc. assigned all of its rights under the lease to defendant Light RE LLC, by written assignment [Doc 12] which plaintiff consented to in May of 2008. Defendant Rohner is not a party to the assignment, but he signed it as

[* 1]

a "member" of Light RE LLC.  There is no lease guaranty.  The lease was to expire on September 30, 2008.  Plaintiff asserts in the notice of termination [Doc 14] that the lease was renewed for five more years, to expire on September 30, 2013. A copy of the renewal document is not provided.

On February 4, 2020, plaintiff served defendants with a ninety-day notice of termination of their month-to-month tenancy [Doc 14].  A copy of the affidavit of service of this predicate notice does not seem to be in the file.  It is noted by the court that an ejectment action required a 90-day notice at the time this notice was prepared (*591 Realty LLC v Curanaj*, 2023 NY Slip Op 34261[U] [Sup Ct, NY County 2023]).  Further, acceptance of rent vitiates the termination notice, but there is no indication whether plaintiff accepted rent from defendant after the notice of termination was served  (*id.*).  Plaintiff's attorney states [Doc 67] that "Both prior to, and following the date of the Consent Order, the Defendants have failed to pay to Landlord any use and occupancy for their continued possession of the Unit."  Counsel's wording is ambiguous. That order is dated June 22, 2020.

"It is well-settled law in the Second Department that 'when there is a valid landlord-tenant relationship, a predicate notice must be served on the defendant before commencement of an ejectment action.'" (*JCF Assoc. LLC v Take Two Outdoor Media LLC*, 2023 NY Slip Op 30802[U],  [Sup Ct, Kings County 2023]. In the absence of the  giving of such notice, an ejectment action will not lie (*Gerolemou v. Soliz*, 184 Misc. 2d 579, 710 N.Y.S.2d 513 [App Term, 2d Dept 2000]).  No notice is required only if the termination is at the end of the lease term. No statute specifically abrogates the common-law rule that notice is unnecessary to maintain an ejectment action against a tenant who wrongfully holds over

[* 2]

after expiration of a fixed and definite term (*Alleyne v Townsley*, 110 AD2d 674 at 675 [2d Dept 1985]). But here, the termination did not occur until almost seven years after the lease expired, and the plaintiff accepted rent after the lease expired, and thus a notice was required.

Until recently, under the common law, the proper notice to terminate a month-to-month tenancy prior to commencing an ejectment action was six months (*Kosa v Legg*, 12 Misc 3d 369, 383 [Sup Ct Kings County 2006] *cf. Kaycee Props., LLC v Colon, 2023 NY Slip Op 30951[U] [Sup Ct, Monroe County 2023]*).

The Housing Stability and Tenant Protection Act of 2019, Laws 2019, Ch 39, §38 (Part Q) amended Real Property Law § 226-c to state that "[w]henever a landlord . . . does not intend to renew the tenancy, the landlord shall provide written notice as required in subdivision two of this section". Section 2 requires that whenever a tenant "has occupied the unit for more than two years or has a lease term of at least two years, the landlord shall provide at least ninety days' notice." (RPL § 226-c.) Further, "[t]he express terms of the statute do not limit its application to actions brought as summary proceedings pursuant to Article 7 of the Real Property Actions and Proceedings Law" (*Kaycee Props., LLC v Colon*, 2023 NY Slip Op 30951[U], [Sup Ct, Monroe County 2023]). Thus, after June 14, 2019, the predicate notice for a month-to-month tenant is 90 days (see *26 Bowery LLC v Mimin Yong (In re 26 Bowery LLC)*, 2023 Bankr LEXIS 2963 [Bankr SDNY Dec. 18, 2023, Nos. 22-10412 (MG), 22-10413 (MG), 23-01166 (MG)]). This court offers no opinion on the issue of the predicate notice herein, as it is not an issue raised in the motions. This discussion, however, has been had on the record with the attorneys for both sides in the past, and neither attorney took any action in response.

A complaint was filed, and an index number was purchased, on March 3, 2020.

[* 3]

Plaintiff did not wait 90 days after the notice of termination to commence the action. At the same time, plaintiff filed a proposed Order to Show Cause. It was signed by the Justice in the Ex Parte Part on March 5, 2020 [Doc 16].

The order to show cause asks "for an Order: (a) declaring that Defendants' operation of an SRO hotel and/or bed and breakfast out of the Premises in the Building is unlawful and incurable and in violation of the substantial obligation of his tenancy and/or the law; (b) granting a preliminary injunction enjoining and restraining Defendants from using the Premises in violation of the lease for the Premises and the law, including, but not limited to: (i) operating an SRO hotel and/or bed and breakfast out of the Premises in violation of the New York City Hotel Occupancy Tax Law and New York City Unincorporated Business Tax Law; (ii) using the Premises, in whole or in part, by subleasing the Premises, in whole or in part, to transient occupants; (iii) providing access to, from, and within the Building to transient occupants; and (iv) allowing persons other than Defendants to occupy the Premises in violation of RPL Secs. 226-b and 235-f; (c) barring Defendants, their agents, servants, and all persons chiming under them from operating an SRO and/or bed and breakfast, including renting portions of the Premises, except as per RPL Sec. 226-b and in accordance with RPL Sec. 235-f."

It is noted that the courts were closed on March 17, 2020 due to the Covid-19 Pandemic. The order to show cause (MS #1) was settled before the parties could appear in court, with a so-ordered stipulation, filed at Document 23 on June 22, 2020. In the stipulation, defendants agreed "that, immediately upon execution of this Agreement, they will not (i) run advertisements on the website www.Airbnb.com and/or similar websites/platforms/mobile applications to advertise and/or solicit transient occupants

[* 4]

(defined as paying guests staying less than 30 days) to stay in the Premises; (ii) operate an SRO hotel and/or bed and breakfast out of the Premises in violation of the New York City Hotel Occupancy Tax Law and New York City Unincorporated Business Tax Law; (iii) rent the Premises, in whole or in part, to transient occupants; (iv) provide access to, from, and within the Building to transient occupants intended to occupy the Premises; (v) sublease the Premises and/or any portion thereof except in accordance with RPL Secs. 226-b and/or 235-f" [Doc 23 ¶3].  Presumably, this agreement is to remain in effect until this action concludes.

The amended complaint seeks a declaratory judgment that "Defendants' operation of a SRO hotel and/or bed and breakfast out of the Premises is unlawful, an incurable default, and in violation of: (i) substantial obligations of their tenancy; (ii) HMC §§ 27-2004.a.8(a), 27-207, and 27-207729 § 2-09(c)(4), (iii) 29 RCNY § 2-09(c)(4), (iv) RPL §§ 226-b and 235-f, (v) RCL § 26-408(a)(1); (vi) 9 NYCRR § 2204.2(a)(1); (vii) MDL § 4.8a; and (viii) Building Code § 310.1.2,; and (ix) the New York City Hotel Occupancy Tax Law and UBT § 11-503; a permanent injunction enjoining and restraining Defendants from: (i) operating a SRO hotel and/or bed and breakfast out of the Premises; (ii) using the Premises, in whole or in part, for illegal business purposes by subleasing the Premises, in whole or in part, to Transients; and (iii) providing unfettered access to, from, and within the Building to Transients who are not lawful occupants/tenants of the Premises and/or Building; and (iv) allowing Transients to occupy the Premises in violation of: (a) RPL 226-b, (b) HMC §§ 27-2004.a.8(a), 27-207, and 27-207729 § 2-09(c)(4), (c) 29 RCNY § 2-09(c)(4), (d) RPL §§ 226-b and 235-f, (e) RCL § 26-408(a)(1); (f) 9 NYCRR § 2204.2(a)(1); (g) MDL § 4.8a; (g) Building Code § 310.1.2,; and (h) UBT § 11-503; a preliminary and

[* 5]

permanent injunction (i) ordering Defendants and their agents to remove the padlocks from the fire doors to the Building's roof and the door to the Premises; and (ii) enjoining and restraining Defendants from padlocking any door in the Building, including, but not limited, to the fire doors to the Building's roof and the door to the Premises; a preliminary and permanent injunction: (i) ordering Defendants and their agents to remove the existing camera system and "ring" camera system in the Building; and (ii) enjoining and restraining Defendants and their agents from installing any camera, entry, or security system in the Building without the express permission of Plaintiff; a preliminary and permanent injunction: (i) ordering Defendants and their agents to remove the existing signs in the Building and on the Building's roof; (ii) ordering Defendants and their agents to remove any roping on the roof or in any common area; (iii) enjoining and restraining Defendants and their agents from posting any signs in or on the common areas of the Building; (iv) enjoining and restraining Defendants and their agents from preventing access to any common areas of the Building including, but not limited to, the Building's roof; an order and judgment that Defendants, their agents, servants, and all persons claiming under them to be ejected from the Premises and that Plaintiff be immediately restored to possession of the Premises; an order compelling to Defendants to pay use and occupancy to Plaintiff pendente lite in an amount to be determined by the Court, but at a minimum of $3,591.00 per month; and reasonable attorneys' fees incurred in connection with the prosecution of this action."

The complaint was amended shortly after the stipulation settling the order to show cause was entered into, [Document 24, filed June 30, 2020] and defendants then answered the amended complaint [Doc 25]. The note of issue is due to be filed shortly. Four of the five motions previously filed were withdrawn. Motion sequence #4, plaintiff's motion for

[* 6]

interim use and occupancy, was denied. None of the parties is represented by the same law firm which represented it/him in 2020.

***The Motions***

Now, in motion sequence #6, plaintiff moves for an order "(a) Determining that LIGHT RE LLC has had no interest in or continued occupancy of the third floor of 100 Metropolitan Avenue, Brooklyn, New York, since in or about February, 2017, based on STEFAN ROHNER's affidavit stating that LIGHT RE LLC's interest 'reverted to Landlord and/or Loft Law tenants long ago'; (b) Granting summary judgment dismissing the Defendant's third affirmative defense because, although the premises qualifies for coverage pursuant to MDL §281(5), Defendant ROHNER did not take occupancy of the premises until July 2017 and does not qualify for protected occupancy pursuant to the Loft Board's privity regulations; (c) Granting partial summary judgment dismissing the fourth affirmative defense because the premises are subject to coverage pursuant to MDL ¶281(5) and, therefore, cannot be subject to coverage pursuant to MDL ¶281(d)."

Defendants cross move, in motion sequence #7, for an order "Pursuant to Civil Practice Laws and Rules § 2201 staying this proceeding to allow the Loft Board to adjudicate issues related to coverage and protected occupancy."

The first branch of the plaintiff's motion is for an order "determining that LIGHT RE LLC has had no interest in or continued occupancy of the third floor of 100 Metropolitan Avenue, Brooklyn, New York, since in or about February, 2017, based on STEFAN ROHNER's affidavit stating that LIGHT RE LLC's interest "reverted to Landlord and/or Loft Law tenants long ago." This quote seems to come from an affidavit dated June 17, 2021, in which Mr. Rohner states, in opposition to plaintiff's motion for use and occupancy, that

[* 7]

"The landlord seeks to collect $18,479 per month in use and occupancy based on a lease that expired 13 years ago. See Kombol Aff., ¶32; Exhibit "E" [NYSCEF #71]. Moreover, this lease was for the entire top floor. I, however, no longer have possession or control of the whole floor. Rather, I occupy only a small fraction. The rest of the space reverted to the landlord and/or Loft Law tenants long ago" [Doc 86 ¶5].

Defendants oppose the plaintiff's motion in their cross-motion papers, with an affirmation of counsel and an affidavit from Mr. Rohner, the pleadings, other papers already in the NYSCEF file for this action, and a copy of the Loft Board's Order, dated September 25, 2020. This Order "accepts in part and rejects in part the Report and Recommendation of Administrative Law Judge Faye Lewis [OATH] dated July 8, 2019." The gist of the Loft Board's Order is that the building is declared to be an Interim Multiple Dwelling, and that most of the applicants were granted Article 7-C protection. There are thirteen covered apartments, located on both the second floor and the third floor of the building. It is noted that Stefan Rohner was not an occupant who applied for protection, either in the tenants' 2012 application, their 2015 application, or their 2016 application. Mr. Rohner was the overtenant/lessee of the entire third floor, who created the third-floor applicants' apartments and leased them to the applicants. He testified at the trial held at OATH, which is stated in that decision [Doc 63] to have continued over twenty-three different dates. It seems there was no testimony by the plaintiff property owner herein, although he had counsel present. From the affirmations he has provided in this action, Mr. Eisenberg, the President of the plaintiff corporation [*e.g.,* Doc 84 ¶1], does not live in the United States.

Defendants' counsel's affirmation [Doc 148] states that defendants oppose the plaintiff's motion, but he fails to address this branch of the motion in any way. Mr. Rohner's

[* 8]

affidavit states "I am the sole member of Light RE LLC." He continues "first, through my companies (Rohner Furniture Inc., General Manufacturing Corp, Interior Installers LLC, and Light RE LLC), [I] began work in the subject building approximately thirty-four years ago. I have invested, in the aggregate, millions of dollars to renovate and use said top floor for commercial and residential use for myself, and then since 1993, with the agreement of Frank Eisenberg, develop units for artists in residence, and rehabilitate the building in general" [Doc 147 ¶6]. He states "I reside in a loft apartment, unit 309, at 100 Metropolitan Avenue, Brooklyn, New York (hereinafter "the loft" or "subject unit"). I have lived here since at least July 2017" [Doc 147 ¶2]. He states "I created the loft out of a small portion of the top floor space I rented through my company, Light Re LLC. The loft is outfitted for residential use, with a full kitchen, full bathroom, living area, and bedroom" [*id.*]. Mr. Rohner does not actually say anything which opposes the branch of the plaintiff's motion which asks the court for an order declaring that Light RE LLC no longer has an interest in or continued occupancy of the third floor of the building. It must be noted here that an "occupant qualified for possession of Residential Unit and protection under Article 7C" in 29 RCNY §2-08(s)(1) "must be a natural person." Thus, plaintiff is entitled to the relief requested.

The next branch of the plaintiff's motion seeks an order "granting summary judgment dismissing the Defendant's third affirmative defense because, although the premises qualifies for coverage pursuant to MDL §281(5), Defendant ROHNER did not take occupancy of the premises until July 2017 and does not qualify for protected occupancy pursuant to the Loft Board's privity regulations". Defendant Rohner's Third Affirmative Defense states, in its entirety, [Doc 25] that "7. The building containing the premises is an

[* 9]

interim multiple dwelling pursuant to MDL §281(5). 8. The premises were occupied for residential purposes for at least 12 consecutive months between the period January 1, 2008 and December 31, 2009. 9. Defendant Rohner assumed residential possession after June 21, 2010 as a tenant. 10. At all relevant times, the premises have been defendant Rohner's primary residence. 11. Accordingly, the premises are an interim multiple dwelling and defendant Rohner is the protected occupancy [sic] pursuant to 29 RCNY §2-09(b). 12. Plaintiff has not served the notices required by the Loft Law and/or Loft Board rules including, without limitation, a notice to cure."

The court must note here that Mr. Rohner's counsel states in his affirmation that "the Loft Board has primary jurisdiction and substantial expertise on coverage applications. The Board, not this court, should decide policy and resolve the nuanced factual and legal issues related to Defendant's Rohner's claim that his unit is covered, and he is a protected occupant [Doc 148 ¶20]. Thus, defendant clearly agrees that this court should not determine whether he is a protected occupant. Further, while the complaint seeks a judgment of ejectment, this motion does not.

The court has no opinion whether Mr. Rohner can still be found to be a tenant protected pursuant to MDL §281(5), in part because it is not known if he has submitted an application, and in part because it is unclear if there is still time to do so. The deadline for submitting an application under MDL §281(5) was extended for buildings in the North Brooklyn IBZ to December 31, 2023[1], but the court does not know if this property is in that zone. From the filings by defendant Rohner, he has made inconsistent statements about which window period he intends to use for his application. In his most recent affidavit, he

---

[1] 29 RCNY §1-21.

states "I have lived here since at least July 2017" [Doc 147 ¶2]. Again, he has not provided a copy of an application for protection under the Loft Law. The Loft Board order issued in 2020 found that ten units were covered under §281(5), and three were covered under §281(6), because these three units had applied under §281(5) and did not meet the criteria for that window period, but, as §281(6) created a new window period, and specified that the new law applied to all pending applications, the occupants of these three units were considered using the new window period and were determined to be protected under the new statute.

Next, plaintiff seeks an order granting it partial summary judgment and striking "the fourth affirmative defense because the premises are subject to coverage pursuant to MDL ¶281(5) and, therefore, cannot be subject to coverage pursuant to MDL ¶281(d)". Counsel meant section, not paragraph, and §281(6), not §281(d). The fourth affirmative defense, states in its entirety, [Doc 25] that "13. The building containing the premises is an interim multiple dwelling pursuant to MDL §281(6). 14. The premises were occupied for residential purposes for at least 12 consecutive months between the period January 1, 2015 and December 31, 2016. 15. Defendant Rohner was residing in the premises on June 25, 2019. 16. At all relevant times, the premises have been defendant Rohner's primary residence. 17. Accordingly, the premises are an interim multiple dwelling and defendant Rohner is the protected occupancy pursuant to 29 RCNY §2-09(b). 18. Plaintiff has not served the notices required by the Loft Law and/or Loft Board rules including, without limitation, a notice to cure."

Before this action was commenced, MDL§ 281(6) was added to MDL§ 281 in 2019. It provides for a new window period for covered lofts and made some other changes to the

[* 11]

law. The new window period is January 1, 2015 to December 31, 2016, and applicants seeking coverage under MDL§ 281(6) must prove, among other things, that he or she occupied the premises as his or her primary residence for twelve consecutive months during the period.

The court finds that both of the defendants' affirmative defenses, that Mr. Rohner is a protected tenant under the NYC Loft Law, as amended, whether under §281(5) or (6), should not be dismissed/stricken, as, if he is able to establish, with a determination of the NYC Loft Board, that he is a protected occupant, it would be a complete defense to the cause of action for ejectment, as it is premised on the grounds that the unit he occupies is unlawful to reside in. Loft units, once granted protected status, permit the occupants to reside in apartments that do not have a residential certificate of occupancy so long as the residential part of the building is in the process of being legalized for residential occupancy under the Loft Board's oversight and timeline.

In Motion Sequence #7, defendant Rohner seeks an order staying this action "pending the Loft Board's determination" of his protected status. While this is relief which is possible to grant, the court finds that the defendant has failed to make a prima facie case for the relief requested in the motion. Specifically, he has not provided any evidence that he has actually filed an application under the Loft Law with the New York City Loft Board (*Malden v Wykoff S.P.*, 192 AD3d 1002, 1006 [2d Dept 2021]). Nor has he offered any evidence that he has occupied the unit as his residence during any of the statutory window periods. Defendant provides a copy of a tax return, which is not in admissible form, and nothing else. The Loft Board regulations (29 RCNY §2-08[s][5][ii]) provide that, in addition to the unit and the building qualifying, the applicant must establish that he or she uses the

[* 12]

unit as a primary residence, and "[a]lthough no single factor is determinative, factors for the Loft Board to consider in determining whether the individual uses the IMD unit as a primary residence include, but are not limited to:

(A)   Whether the individual resides in the unit;

(B)   Whether the individual keeps furniture, clothing, and other personal effects in the IMD unit;

(C)   Whether the individual listed the IMD unit as a residential address on official documents filed with government agencies. Such documents may include, but are not limited to, a tax return, a motor vehicle registration, a driver license, or a voter registration;

(D)   Whether the individual subleased the unit to another in violation of law or the Loft Board's rules; and

(E)   Any other factor the Board deems relevant.

Accordingly, the court finds that defendant Rohmer has failed to make a prima facie case that he has a pending application at the Loft Board, or that he has a meritorious claim for protected status, sufficient to justify staying this action until the Loft Board makes a determination whether he is a protected occupant.

### Conclusions of Law

Accordingly, it is

**DECLARED, ADJUDGED AND DECREED** that defendant Light RE LLC has no interest in or continued occupancy of the third floor of 100 Metropolitan Avenue, Brooklyn, New York, as the lease to it expired on September 30, 2013, the NYC Loft Board has determined that all of the space on the third floor other than unit 309, which defendant Rohner claims he lives in, are occupied by protected tenants pursuant to the Loft Law, and Rohner claims he is also a protected tenant, awaiting adjudication of this by the NYC Loft Board.  A limited liability company is ineligible to be a protected tenant.  Therefore, Light RE LLC has no remaining interest in the premises.  It is further

**ORDERED** that the plaintiff's motion (MS #6) for an order granting it partial summary

[* 13]

judgment and striking defendant Rohmer's Third and Fourth Affirmative Defenses is denied; and it is further

ORDERED that the defendants' motion (MS #7) for an order granting defendant Rohner a stay of this action until the NYC Loft Board determines whether he is a protected occupant is denied.

This constitutes the decision and order of the court.

Dated: December 20, 2023

**E N T E R :**

_____

**Hon. Debra Silber, J.S.C.**

[* 14]